## UNITED STATES v. ILLINOIS CENT. R. CO.

(District Court, E. D. Louisiana. February 5, 1916.)

### No. 2975.

1. CARRIERS ⟨≈⟩32(2)—CHARGES—DISCRIMINATIONS—SWITCHING CHARGES.

An importer of bananas had a contract with Z. under which all ripe bananas and all bananas that were turning ripe became his property. Upon the arrival of a ship a railroad would furnish cars to move the cargo, and, as the track on which cars for the ripe bananas were usually placed, held only five cars, the five cars first placed, when loaded, were hauled off to some convenient team track in the same yard. There they were disposed of from the cars to local buyers; a small percentage of the cars being shipped to other points. *Held,* that this movement of the cars from the wharf track to the team track was for the benefit of Z., and not solely for the convenience of the railroad company, and the company was required to collect therefor a switching charge, contained in its tariffs and schedules on file with the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 84; Dec. Dig. ⟨≈⟩32(2).]

2. COMMERCE ⟨≈⟩27—CHARGES—DISCRIMINATIONS—SWITCHING CHARGES—"INTERSTATE COMMERCE."

The movement was an interstate movement, within the jurisdiction of the Interstate Commerce Commission, as the intention of the shipper as to the ultimate destination at the time freight starts is the test of its character, and the entire movement of the ripe bananas from the plantation to the team track was a continuous voyage for Z.'s account; the fruit becoming automatically his property as it began to turn ripe, and not remaining the property of the importer until separated from the unripe fruit at the wharf.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ⟨≈⟩27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

Criminal prosecution by the United States against the Illinois Central Railroad Company. Judgment for the United States.

Joseph W. Montgomery, Asst. U. S. Atty., of New Orleans, La., and H. B. Duncan, for the United States.

W. Catesby Jones, of New Orleans, La., for defendant.

FOSTER, District Judge. In this case an indictment was returned against the defendant for failing to collect a switching charge of $2 per car, as per its tariffs and schedules on file with the Interstate Commerce Commission, for moving certain cars for account of S. Zemurray from the wharf to another part of its levee yard.

The defendant pleaded not guilty, waived the jury, and the case is submitted to me on an agreed statement of facts and some slight testimony to supply missing details in the agreement. There is no dispute as to the facts, however, and they are as follows:

Zemurray has a contract with the United Fruit Company by which all the bananas imported by the Fruit Company which are ripe and turning ripe become his property.

Before a ship arrives, the railroad is notified and furnishes cars to move the cargo. The wharf track on which empties for ripes are usually placed holds five cars. There are usually more than five cars of ripes in a cargo, and as soon as the five cars first placed are loaded they are hauled off to some convenient team track in the same yard. There the ripe bananas are disposed of from the cars to local buyers; the railroad allowing five days' storage without demurrage and making no charges for the switching. A small percentage of the cars is shipped to other points, both in and out of the state.

Under the contract the Fruit Company must deliver and Zemurray must receive all the ripe and turning bananas, and agents of both parties jointly separate and classify the fruit on the wharf as it comes out of the ship. The bananas, of course, all come from foreign countries.

The defendant contends the switching of the cars is for its own convenience and does not constitute a movement; but, if it be considered a movement, it is purely local, and not within the jurisdiction of the Interstate Commerce Commission.

[1] I must disagree with both of these contentions. It is clear that, unless the cars are hauled from the wharf to a convenient team track, Zemurray could not do his local business conveniently, and the service is purely for his benefit. If he could sell his fruit on the wharf, there would be no need of the railroad furnishing cars at all.

[2] It is equally clear that the movement is interstate in its character. It would be useless to attempt to analyze and distinguish the many decisions dealing with the subject, for it is well settled that the intention of the shipper as to the ultimate destination at the time the freight starts is the test of its character, regardless of whether the voyage is temporarily broken, more than one carrier transports it, or it moves on through or local bills of lading. There could be no doubt that all the parties here intended that the ultimate destination of the ripe bananas should be the team tracks. The business is continuous and systematic, and some part of each cargo goes to Zemurray. It will not do to say delivery is made to Zemurray at the end of the ship's tackles, for the fruit becomes automatically his property as it begins to turn ripe, and the subsequent separation of it is a mere detail. All parties know at the time a cargo starts from Central America that a portion of it belongs to Zemurray by the inevitable force of circumstances; and the entire movement from plantation to team track is a continuous voyage for his account.

In my opinion the defendant is guilty as charged on all counts, and there will be a judgment accordingly.